**UNITED STATES FIDELITY & GUARANTY CO. v. UNITED STATES.**

(Circuit Court of Appeals, Fourth Circuit. February 27, 1926.)

No. 2385.

United States ⊂⇒73—Government could not treat contract for war material as terminated for default of contractor, after it gave notice of cancellation because material was no longer needed.

Where contract to furnish war chemical to the United States authorized its termination by notice from Chief of Ordnance (1) because in his opinion need for the article had ceased, or (2) because of contractor's continued defaults, and notice of cancellation on the first ground was given, and contractor accepted it and did no further work, the government could not claim termination on ground of any existing defaults of contractor, and thus deprive

him of allowances provided by contract in case of termination on first ground.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Action by the United States against the United States Fidelity & Guaranty Company. Judgment for the United States, and defendant brings error. Modified.

J. Kemp Bartlett and Samuel K. Dennis, both of Baltimore, Md., for plaintiff in error.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., for the United States.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

WADDILL, Circuit Judge. This is a writ of error to the United States District Court for the District of Maryland. Defendant in error, plaintiff in the court below, instituted its action at law to recover of plaintiff in error the amount of a certain penal bond for $30,000, dated the 21st of May, 1918, given to pay to the defendant in error the amount of said bond, and to indemnify and save harmless said defendant in error on account of advances made by it under said bond and upon the terms and conditions therein specified.

Prior to the execution of this bond, to wit, on the 14th day of May, 1918, defendant in error entered into a contract with the Gas Oil Chemical Company, whereby the latter company agreed to sell and deliver to the defendant in error 100,000 gallons of toluol at the price of $1.50 per gallon. Briefly, the terms and conditions set forth in the contract were that the contractor would sell and deliver to the United States, and the United States would purchase, the said 100,000 gallons of toluol, manufactured in compliance with certain specifications of the Ordnance Department, dated the 30th of March, 1918. Deliveries were to begin as soon as practicable, not later than July 1, 1918, and thereafter at the rate of not less than 10,000 gallons per month, until the total quantity contracted for had been furnished. With a view of facilitating the furnishing of the said toluol, the parties entered into the contract of the 21st of May, 1918, as supplemental to that of the 14th of May, 1918, whereby the government agreed to, and did, advance, on account of such undertaking, the sum of $30,-000, and the said Gas Oil Chemical Company obligated itself to repay the $30,000 within the time specified in said supplemental contract. The bond sued on herein was duly executed by plaintiff in error, the surety company, to save the government harmless on account of such advance. Defendant in error, insisting that plaintiff in error had wholly breached its contract, instituted this suit to recover the $30,000 paid by it as aforesaid, and for the repayment of which the bond was given. The plaintiff in error duly appeared and interposed its defense to the action, insisting that it was not, and the government was, responsible for the alleged breach of the contract, and that it had sustained damages, as a result thereof, for an amount largely in excess of the bond sued on, and that hence no recovery should be had thereon.

Upon appropriate pleadings and the testimony adduced in open court, the District Court instructed the jury to return a verdict in favor of the defendant in error for the total amount of $30,000, the penalty of said bond, less $879.75 paid on account thereof, to wit, the sum of $29,102.25. The court submitted to the jury the question of whether interest should be allowed upon the amount found to be due the government. Upon the jury awarding interest, the court entered its judgment against the defendant, plaintiff in error herein, for $32,361.70, and rejected defendant's defense in its entirety.

Many exceptions were taken to the action of the trial judge, set forth in 42 different bills of exceptions, and the plaintiff in error makes 43 assignments of error to the court's action. The rulings of the court, as set forth in the 42 bills of exceptions, cover a great variety of questions, some of which may be said to be of doubtful propriety; but all, with the view this court takes of the merits of the controversy, become immaterial, and the same may be said of the greater number of assignments of error. The bills of exceptions and assignments of error, in nearly every instance, relate to matters held by the lower court, and in which we concur, either to depend upon hearsay testimony, or to relate to matters immaterial and irrelevant to the real merits of the case.

The case, as decided by the District Court, is apparently a simple one, in that, with a record of considerable size, and with the large number of exceptions and assignments of error as aforesaid, the judge's conclusion is that the government should recover the largest possible amount to which it would be entitled in any view of the case, and the defendant the least amount. This makes the case one of easy solution, if the conclusions are correctly arrived at. A careful read-

ing of the record, especially from pages 109 to 124, and pages 130, 131, gives apparently an accurate account of the claims asserted by the defendant, plaintiff in error, the consideration given the same by the War Department, and the outcome thereof. Briefly stated, the plaintiff in error placed its damages, resulting from the breach of the contract by defendant in error, at $53,548.01, the same being set forth in eight different items. Of these items, only Nos. 7 and 8, for $14,409 and $5,246.44, respectively, aggregating $19,655.44, were allowed, which defendant, plaintiff in error, declined to accept, with the result that, so far as the War Department was concerned, the entire claim was rejected.

The court, in reaching its conclusion, seems to have acted upon the theory that the contract was breached under the second paragraph of article 12 of the original contract of the 14th of May, 1918, because of the abandonment and the willful and continuous violation of it by the contractor, and not under the first section of said article, which authorizes the termination and cancellation of the same upon giving notice to the contractor by the Chief of Ordnance, if in his opinion the need for further toluol under the contract had ceased to exist. Article 12 of the original contract is as follows:

"*Termination of Contract.*—This contract, including any extension thereof, may be terminated and canceled by notice in writing to the contractor by the Chief of Ordnance, as follows:

"(1) Because in the opinion of the Chief of Ordnance the need for further toluol under this contract has ceased to exist.

"(2) Because of the abandonment of willful or continued violation of this contract by the contractor.

"Upon termination of this contract for the first-named cause the United States shall pay the contractor (a) for all toluol theretofore accepted by the United States, (b) for all such as may (subject to inspection) be ready for delivery, and (c) for all in process of manufacture. In addition, if at the time such notice is given less than 100,000 gallons has been accepted by the United States there may be added such sum, if any, as the Chief of Ordnance may deem necessary justly to compensate the contractor for its work hereunder. In addition, if at the time such notice was given less than 12,000 gallons of toluol has been accepted by the United States, the United States shall pay to the contractor the difference in value between 12,000 gallons and the amount theretofore accepted

and paid for by the United States. Any termination of this contract for the second-named cause or causes shall be without prejudice to any other rights or remedies that the United States may have at law against the contractor."

That the breach of the contract was by the government, and not by the contractor, seems to us, from the testimony in this case, to admit of no doubt. The government took pains to give notice of cancellation in strict accordance with section 1 of article 12, and the contract was promptly canceled as soon as it became evident that the government's needs would no longer require the further use of toluol. This was one of the very possibilities that caused the provision, with respect to cancellation by the government, to be inserted in the contract. That there may be no question as to who breached the contract, and the causes thereof, the following extracts from the proceedings and findings of the "War Department Claims Board, Appeals Section," pages 111, 112, and 115 of the record, are given:

"* * * In order that the issues be clarified, the Appeal Section, War Department Claims Board, now finds that this claim arises by reason of a formally executed contract not under the Act of March 2, 1919, and further that the contract was not canceled for default; that the contract was suspended in the interest of public policy (the need of toluol having ceased to exist) under subdivision 1 of article XII of the contract. It is provided in the contract in subdivision 2 of article XV, under the subtitle 'Disputes':

"'If any doubts or disputes shall arise under this contract, they shall be referred to the Chief of Ordnance for determination. If, however, the contractor shall feel aggrieved at any decision of the Chief of Ordnance upon such reference, he shall have the right to submit the same to the Secretary of War, whose decision shall be final.'"

"On November 15, 1918, claimant received notice from the Chief of Ordnance suspending all further operations under the contract, assigning as a reason therefor, that the further need for toluol for governmental purposes had ceased to exist, and that the termination or suspension of the contract was in the interest of public policy. Claimant accepted the notice of termination or suspension and made no further efforts to produce or deliver toluol under this contract."

The right to terminate this contract by notice in writing from the Chief of Ordnance was specifically provided, and the reason therefor made clear, viz. when the need for

toluol under the contract had ceased to exist. This was strictly war business, dealing with one of the most dangerous instrumentalities of war, and the provision was, of course, wisely made that as little as possible of the highly destructive chemical should be produced, because of the danger incident thereto.

In arriving at the amount due the plaintiff, there appears to be manifest error in this: The government is given full credit for the advance of $30,000, with interest, and the defendant is allowed credit only for the amount due contractor on account of the 2,934 gallons of toluol actually shipped, viz. $897.72. In these calculations, sight seems to have been lost entirely of the latter part of the provisions of article 12 of the contract of the 14th of May, aforesaid, providing for the termination of the contract, where it is stated that, if less than 12,000 gallons of toluol be furnished, to compensate the contractor the difference between the amount in value of the 12,000 gallons and the quantity actually delivered should be paid by the government. It was under this paragraph of article 12, and article 9 of the same contract, that the War Department authorities, at page 123 of the record, made the allowance of $19,655.44 hereinbefore mentioned. This last-named amount is the least that the contractor should be given credit for in the adjustment of this claim against the government.

A further suggestion is made on behalf of the government that, as the contractor was in default on the contract, the same was terminated, and should now be so held, and no allowance made for losses arising thereunder to plaintiff in error. This precise question (Record, p. 101) was raised before the "War Department Claims Board, Appeals Section," and rejected, for the reason that the contract was not terminated under the clause thereof allowing termination for default, but that it was suspended, and could not now be so terminated, to relieve the government of obligations which it may have incurred, and that the government's failure to terminate the contract before it was suspend-

11 F.(2d)—48

ed by mutual consent waived its right to do so.

There is one other matter which it is necessary to consider, and it is as to the sum upon which interest was allowed by the jury. The judge instructed the jury to return a verdict in favor of the defendant in error for the penal sum of $30,000, less the sum of $897.75, allowed as a credit thereon, to wit, $29,102.25, and submitted to the jury the question of whether they would allow interest upon the amount thus allowed by the court or not, and the jury thereupon returned a verdict for $32,361.70; that is to say, $29,102.25 and interest thereon of $3,259.45, upon which judgment was entered by the court. The allowance of interest on the $29,102.25, without giving credit for the deductions made by this court, aggregating $19,655.44, would manifestly operate unjustly to the plaintiff in error, in that interest would be awarded on the sum of $19,655.44, the amount to which it was entitled; that is to say, interest should have been calculated under the instructed verdict of the court in favor of the defendant in error for $9,446.81, instead of $29,102.25. This would make a difference in the interest charged, constituting a possible remittitur hereinafter decreed to be made by it upon its judgment for $32,361.70, of $2,201.41.

The result of the conclusions reached by this court is that the judgment of the District Court should be reversed, and the case remanded to that court, with directions to set aside the verdict and grant a new trial, unless defendant in error files in the said District Court within 60 days from the date of the judgment herein a remittitur of $21,856.85 from its recovery, that is to say, $19,655.44, the sum allowed by this court as a further credit on the said judgment, together with the item of $2,201.41, error in calculating the amount of the interest with the credit omitted, and that said defendant in error pay all the costs in this court, and, if said remittitur is filed and said costs are paid within 60 days from the date hereof, then the judgment rendered below, as modified, is affirmed.

Modified.